ARTHUR MITSMENN *vs.* MARION MITSMENN.

MAY 28, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

O'Connell, J.   This action of assumpsit was tried in the superior court before a justice thereof sitting without a jury and resulted in a decision for the defendant.   The case is before us on the plaintiff's sole exception to that decision.

The declaration contains only the common counts.   The plaintiff's amended bill of particulars stated that his claim was based upon money had and received to his use and that he was unable to give an itemized statement of such claim.

The plaintiff, who is a son of defendant, testified that in 1942 and 1943 he was working at the Wanskuck Company and living at home; that money was being deducted from his pay each week to purchase $25 war bonds but that he did not remember how many were purchased for his account; and that he turned them over to his mother to keep for him.   He further testified that he entered the United States Navy October 15, 1943 and was discharged June 3, 1946; that during that period he sent home money orders about once a month, the amounts thereof varying from $100 to $200; that these sums were sent by plaintiff to his mother with the understanding that they were to be deposited in the bank in his name; that over the period of approximately thirty-two months while in the navy he sent home about $3,200, which included certain sums received by him from other sources; that he kept no stubs or receipts for such payments; and that his mother, who sent him $50 to get home at the time of his discharge, had possession of the bankbooks which he never saw.

He also testified that on May 27, 1947 some of his money and the proceeds of his bonds were used as his contribution towards the purchase price of a house; that the deed was taken in his name and that of his brother George; and that he later quitclaimed his interest to George because he, plaintiff, "was getting married at the time and my mother and

father believed that if I got married that, if anything should happen to me, my wife would claim the house, she would have an interest in the house."

On cross-examination he testified that he made between $70 and $80 per week while working for the Wanskuck Company but had no records to prove it; that while in the navy he served as an apprentice seaman at $50 per month for a year, as seaman first class at $54 a month for six to eight months, and then as ship's cook third class at $96 per month; and that in 1944 while in the navy he worked for about four months, to the knowledge of the navy, in a warehouse in New York packing bottles at $40 to $45 per week.

He admitted that his total pay for navy service was about $2,184, out of which he paid for uniforms, clothing and entertainment; that he was not shown nor did he ask to see his bankbook when the house was purchased, and that although he signed a paper when his money was withdrawn to purchase the house he did not remember what it said thereon. With reference to his mother's conduct he stated that he was satisfied that whatever money he sent home to be deposited in his account was so deposited by her, and that to his knowledge she never made any withdrawals from that account for her personal use.

The defendant testified that plaintiff sent her money orders occasionally; that she opened an account for him in a Providence bank and mentioned that fact when she wrote to him; that the first money orders received were in 1946; that all the money she received from plaintiff, except $100 sent to her in 1945 as a Christmas present, was deposited by her in his account and that no money was drawn therefrom except at his request; that plaintiff wrote home quite a few times asking for money and she complied with each request, the amounts withdrawn varying at times from $100 to $200; that when he returned to this country from his overseas service, he requested by long distance telephone

money which she withdrew for his benefit, the amounts thereof ranging from $62 to $200; and that he was present at the last withdrawal of $469.98 on May 27, 1947 which represented his contribution when the house was purchased in his name and that of his brother George.

On cross-examination defendant testified that plaintiff sent all payments to her by money order while he was in the service and gave her some cash to deposit after he got home; that she withdrew $200 on June 21, 1946 and gave that money, with plaintiff's knowledge and consent, to her husband to be applied towards the purchase of a Packard car for the family; that when the last money was drawn from plaintiff's account she did not discuss the matter with him, because he knew the purpose of this withdrawal, having previously discussed it with his father; and that the down payment for the purchase of the house was made up as follows: $469.98 by plaintiff, which was the balance in his account; $200 by George; and $1,337.07 by her husband. She finally testified that although she kept no accurate record of what plaintiff sent home all his money was deposited in his account; that no withdrawals were made except at his request; and that she had no recollection of any war bonds belonging to him.

With reference to plaintiff's claim to the ownership of bonds in his mother's possession for his use and benefit, the employment manager of the Wanskuck Company testified that the records of the company did not show any deductions from plaintiff's wages to pay for such bonds and that, if they had been purchased for him through the company, such purchases would appear on its records.

It is clear from the above summary of the testimony that the evidence was decidedly conflicting; that plaintiff's testimony was vague; and that it was unsupported by any convincing data or records produced by him. In that connection the trial justice stated that if he were "to give anything it would be the merest guess * * *. But aside from

that, I do not find any clear basis for finding that the mother has retained money that belongs to the son, and that is another way of saying that I do not think that the son has proved by a fair preponderance of evidence that his mother is indebted to him in any amount."

It is well settled in this state that findings of fact on conflicting evidence by a trial justice sitting without a jury are entitled to great weight and should not be disturbed or set aside unless they are clearly wrong. From a careful reading of the transcript we cannot say that the decision of the trial justice was clearly wrong.

The plaintiff's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*William J. George,* for plaintiff.

*Joseph V. Cavanagh,* for defendant.